FILED

2022 Jan-28  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA

**AMERISURE INSURANCE COMPANY AND AMERISURE MUTUAL INSURANCE COMPANY,**

**Plaintiffs,**

**v.**

**Case No.:**

**AMASON & ASSOCIATES, INC.; CORE TUSCALOOSA 519-611 RED DREW, LLC, AND CORE CAMPUS, LLC D/B/A CORE SPACES; ABIGAIL ARON; ADAM ABRAMS;ALBERT HURDLE; ALEXA CHERCHIO;ALEXANDER DAVIS; ALEXANDER SPURR; ALEXANDRA HALLORAN; ALEXANDRA SAMPLE; ALEXIS THILMONY; ALEXIS WYLIE; ALLISON AND IAN HALDIMANN; ALLISON SPINNER; AMY HUNTER; ANATASIA ALEXANDROU; ANDREW CANTORE; ANDREW GLEMSER; ANNA HILLIARD; ANNE ALEXANDROU; ANTHONY GRANDE; ASHLEY ARNOLD; BAILEY WERTZ; BARBARA ELLIAS; BEN SMITH; BETH LIEBOWITZ; BRADIE ELLIAS; BRENT BASHUM; BRIAN AND LARA LONG; BRIANA DINICOLA; BRYAN MCCLURE; BRYCE DUGGAN;**

CALLAWAY MCKINNON;
CALLI SMITH; CALVERT
SMITH; CAMERON
MACKINTOSH; CAMRYN
DIMSDALE; CARL HUETHER;
CAROL GUTHRIDGE; CAROL
KAISER; CASSIDDY SMITH;
CATHERINE DAVIS; CHANDRA
COLLIN-DUGGAN; CHRISTIE
GUTHRIDGE; CHRISTINA
GORE; CHRISTINE COFFMAN;
CHRISTINE GLEMSER;
CHRISTOPHER LOZZIO;
CHRISTOPHER MAYNARD;
COLLEEN LUCKIE; CONNER
MCAREE; CRAIG COMSTICK;
DANA BASSETT; DAVID ALAN
SCHEER; DAVID HALLORAN;
DAVID LOZZIO; DAVID
MAZZUCCO; DAVID SHORT;
DELANEY CLINGER; DEVIN
GALLO; DIANE ROSSI AND
ROBERT ROSSI; DONNA
HAUGH; DOUGLAS MARTIN;
DRAKE MCCLURE; ELISABETH
DUNBAR; EMILY DARDEN;
EMMA RICE; ERIN FOLEY;
FRANK HURDLE; GARY
HARNUM; GEOFFREY SAMPLE;
GEORGANNA PATE; GRACE
GILBERT; GREG WANTMAN;
GRIFFIN GABBERT; HANNAH
FORGAY; HARDAGE MCAREE;
HAYDEN LONG; HAYLEE
JONES; HEATHER BRADLEY;
HELENA DOMENICO; HOPE
ROSSI; HUNTER HALDIMANN;
IAN CAPOBIAN; IAN WALKER;
JACKSON MCKELL;
JACQUELINE DARLING;

JAKOB PASSOV; JAMES
CARNEY; JAMES JACKSON;
JAMES MACKINTOSH;
JEFFREY DARLING; JEFFREY
HILLIARD; JEFFREY MCKELL;
JENNIFER AND DALE SPURR;
JENNIFER ARON; JENNIFER
DIBIASIO; JENNIFER
DILORETO; JENNIFER EDSON;
JENNIFER ETKIND; JENNIFER
LOZZIO AND CHRISTOPHER
LOZZIO; JESLYN REDCROSS;
JESSICA SCHEER; JESSICA
URIARTE; JOHN BOX; JOHN
BRICKLEY; JOHN FOLEY;
JONATHAN WOOD; JOSEPH
CANTORE; JOSEPH MAURO;
JOSEPH MICHAEL KEOUGH
AND SUSAN KEOUGH; JOSEPH
MICHEL; JOSHUA HOLCOMB;
JOSHUA MANSFIELD; JOSIE
WALKER; JULIE CLINGERL
KARINA BRATKOV; KATE
KIZER; KATRINA THILMONY;
KAYLEIGH PETERSON; KAYLN
PATE; KEITH GABBERT;
KELLY HOFFMAN; KELLY
KNAPP; KELLY MOORE;
KELSEY CURL; KEN
SHOCKLEY; KENDALL
DECOCKER; KERRY GREEFF;
KEVIN JAMES HALL; KIM
HATCHETT; KMBERLY AND
DAVID MAROTTA; KIMBERLY
ATKINS-DAILEY; KIMBERLY
CURL; KRISTEN GLOWACKI;
KRISTEN LUCKIE AND VINNER
SUMMERS; KRISTIN LESTER;
KYLE KNAPP; LAURA
BRIDGEWATER; LAUREN

KEOUGH; LAYNE MORTON; LETICIA BRANCO; LINDA SMITH; LINDSAY CALLAHAN; LINDSAY MARTIN; LISA DALE; LISA RICE; LIZ FETSCHER; LOGAN HODEL; LOUISE BORNHOFEN; MACKENZIE BRICKLEY; MACKENZIE HALL; MACKENZIE SETTING; MADALYN FRAZIOR; MADELINE SHORT; MADELYN HAUGH; MADISON HORNER; MAKENZIE MAYNARD; MALLORY SMITH; MARC MOLLERE; MARCELA MENEGAZ; MAREN GREGG; MARGARET GODWIN; MARIKO REDCROSS; MARISSA DUNLAP; MARK MCKINNON; MARLEY BENNETT; MARTHA COLLINS; MARY CHERCHIO; MASON WILSON; MATTHEW GILBERT; MATTHEW GREEFF; MATTHEW JONES; MATTHEW MESSER; MATTHEW ROY; MAX KINSBRUNER; MEGAN HARNUM; MEGAN HUETHER; MEGHAN CARNEY; MELANIE CASINO; MELISSA DUFFLOCK; MEREITH CLAUNCH; MIA BOX; MICHAEL BAN; MICHAEL BOGGAN; MICHAEL FERRANTI; MICHAEL FERRANTI; MICHAEL ROGERS; MICHAEL ROWLES; AMY HUNTER; MICHAELA CORCORAN; MICHELLE BEDGOOD; MICHELLE SMITH; MOLLY MOORE; NANCY BUTLER; NANCY FORGAY;

NATALIE CONTE; NATHAN DAILEY; NICHOLAS DIBIASIO; NICHOLAS GEORGAS; NICHOLAS MAZZUCCO; NORAH O'MALLEY; NORMA ARNOLD; NORMAN DAVID EADIE; OLIVER ROWLES; PAIGE MOLLERE; PAMELA BOOTH; PARKER GOODWIN; PATRICK HOFFMAN; PAUL CALLAHAN; RACHEL DWYER; RANDIN KINSBRUNER; RAQUEL GALLO; RAYMOND BAUMRUK; REAGAN GARNER; REAGAN WANTMAN; REBEKKAH MATHENY; RENEE ANTOGNOLI; RENEE URIARTE; RHONDA DWYER; RHONDA WYLIE; ROBBIN SPINNER; ROBERT DUNLAP; ROBERT HORNER; ROBIN GARNER; ROBYN BUTLER; RYAN LOUIS BORNHOFEN; RYAN SHOCKLEY; SAHARA ALLEN; SAMUEL LILLY; SARAH EDSON; SARAH HAMMERS; SCOTT AND DENISE HOLCOMB; SCOTT SUNBAR; SCOTT SETTING; SHANNON O'MALLEY; SHEILA EADIE; SHELBY ETKIND; SHELBY HATCHETT; SPENCER BAUMRUK; SPENCER SMITH; SPENCER WOOD; STACEY HOFFMAN AND PATRICK HOFFMAN; STACI FRAZIOR; STEVEN CONTE; STEVEN MAURO; SUSAN KEOUGH; SUSAN PASSOV; SUZANNE MARIE LILLY; SYDNEY

MORTON; TALIA MAROTTA; TANNER SALHUS; TARYN GRANDE; TERESA DILORETO; THOMAS BRIAN BENNETT; THOMAS MCHUGH; THOMAS C. MCHUGH; TIMOTHY MATHENY; TROY SMITH; TYLER BASSETT; TYLER JACKSON; VINNIE SUMMERS; VLADIMIR BRATKOV; WALKER BASHAM; WENDY KIZER; WILLIAM DIMSDALE; WILLIAM GLOWACKI; YEMI YILMA; YUGING CHEN PETERSON; ZAK SEMERE; AMERICAN FLOORING SERVICES, INC.; AQUA ONE, LLC; BLAKE SOLUTIONS, INC.; CHEYANNE CONTRACTING, INC.; CLASSIC COMMERCIAL EXTERIORS, INC.; DECORATING & COATING APPLICATIONS, INC.; FIRE & SAFETY OF AMERICA, INC.; HALLWAY PLUMBING, LLC; JPO CONTRACTORS, INC.; KLW CONSTRUCTION, INC.; METAL ROOFING SOLUTIONS, INC.; MID SOUTH FLOOR SYSTEMS, INC.; MOTUS CONSTRUCTION, INC.; PARKER ENGINEERING & MECHANICAL, INC.; PREMIER SERVICE COMPANY, INC.; ACADIA INSURANCE COMPANY; ACE AMERICAN INSURANCE COMPANY; AMERICAN BUILDERS INSURANCE COMPANY; ARCH SPECIALTY INSURANCE COMPANY; AUTO OWNERS

**INSURANCE COMPANY; AXIS SURPLUS INSURANCE COMPANY; BRIT GLOBAL SPECIALTY USA; CONTINENTALWESTERN INSURANCE COMPANY; FCCI INSURANCE COMPANY; NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY; OHIO SECURITY INSURANCE COMPANY; STARR INDEMNITY INSURANCE COMPANY; UNDERWRITER'S AT LLOYD'S OF LONDON; UNITED SPECIALTY INSURANCE COMPANY; U.S. SPECIALTY INSURANCE COMPANY; AND UNITED FIRE & CASUALTY COMPANY**,

**Defendants.**

## <u>COMPLAINT</u>

Plaintiff, Amerisure Insurance Company Amerisure Mutual Insurance Company, by and through its attorney, Kile T. Turner, seeks declaratory relief and respectfully alleges as follows:

## <u>PARTIES</u>

### <u>Plaintiffs</u>

1.      Amerisure Insurance Company is a Michigan corporation with its headquarters and principal place of business in Farmington Hills, Michigan.

2.     Amerisure Mutual Insurance Company is a Michigan corporation with its headquarters and principal place of business in Farmington Hills, Michigan. Amerisure Insurance Company and Amerisure Mutual Insurance Company are collectively referred to as "Amerisure".

## Construction Defendants

3.     Amason & Associates, Inc. ("Amason") is an Alabama corporation with its headquarters and principal place of business in Tuscaloosa, Alabama.

4.     Core Tuscaloosa 519-611 Red Drew, LLC ("Core Tuscaloosa") is a Delaware limited liability company which has conducted business in Tuscaloosa County, Alabama.

5.     Core Campus, LLC d/b/a Core Spaces is a Delaware limited liability corporation, headquartered in Chicago, Illinois with its Executive Management office located in Austin, Texas[1].

## Tenant Defendants

6.     The following individuals are plaintiffs in lawsuits against Core Tuscaloosa 519-611 Red Drew, LLC, and Core Campus, LLC d/b/a Core Spaces and

---

[1] Four separate entities related to Core have been named in the underlying litigation. However, Amerisure is only defending Core Tuscaloosa 519-611 Red Drew, LLC, and Core Campus, LLC d/b/a Core Spaces. Unless otherwise stated, these two defendants are referred to collectively as simply "Core".

Amason for issues related to the construction of a luxury student apartment complex located in Tuscaloosa, Alabama known as "The Hub":

7. Abigail Aron is resident of Tuscaloosa County, Alabama who is over the age of nineteen.

8. Adam Abrams is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

9. Albert Hurdle is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

10. Alexa Cherchio is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

11. Alexander Davis is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

12. Alexander Spurr is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

13. Alexandra Halloran is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

14. Alexandra Sample is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

15. Alexis Thilmony is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

16.     Alexis Wylie is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

17.     Upon information and belief, Allison and Ian Haldimann are residents of Dupage County, Illinois and are over the age of nineteen.

18.     Upon information and belief, Allison Spinner is a resident of Georgia and is over the age of nineteen.

19.     Upon information and belief, Amy Hunter is a resident of New York and is over the age of nineteen.

20.     Anastasia Alexandrou is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

21.     Upon information and belief, Andrew Cantore is a resident of Dupage County, Illinois and is over the age of nineteen.

22.     Andrew Glemser is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

23.     Anna Hilliard is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

24.     Anne Alexandrou is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

25.     Anthony Grande is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

26.     Ashley Arnold is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

27.     Bailey Wertz is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

28.     Upon information and belief, Barbara Ellias is a resident of Kootenai County, Idaho and is over the age of nineteen.

29.     Upon information and belief, Ben Smith is a resident of California and is over the age of nineteen.

30.     Upon information and belief, Beth Liebowitz is a resident of El Paso County, Texas and is over the age of nineteen.

Bonnie Hammers is a resident of North Carolina who is over the age of nineteen.

31.     Bradie Ellias is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

32.     Brent Bashum is an out of state resident who is over the age of nineteen.

33.     Brian and Lara Long are residents of Tuscaloosa County, Alabama who are over the age of nineteen.

34.     Briana Dinicola is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

35.     Bryan McClure is a resident of Illinois who is over the age of nineteen.

36.     Bryce Duggan is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

37.     Callaway McKinnon is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

38.     Calli Smith is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

39.     Calvert Smith is a resident of Collin County, Texas who is over the age of nineteen.

40.     Cameron Mackintosh is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

41.     Camryn Dimsdale is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

42.     Carl Huether is an out of state resident who is over the age of nineteen.

43.     Carol Guthridge is a resident of Philadelphia County, Pennsylvania who is over the age of nineteen.

44.     Carol Kaiser is a resident of California who is over the age of nineteen.

45.     Cassiddy Smith is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

46.     Catherine Davis is a resident of Davidson County, North Carolina who is over the age of nineteen.

47.     Chandra Collin-Duggan is an out of state resident who is over the age of nineteen.

48.     Christie Guthridge is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

49.     Christina Gore is a resident of Virginia who is over the age of nineteen.

50.     Christine Coffman is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

51.     Christine Glemser is an out of state resident who is over the age of nineteen.

52.     Christopher Lozzio is a resident of Cook County, Illinois who is over the age of nineteen.

53.     Christopher Maynard is an out of state of resident who is over the age of nineteen.

54.     Colleen Luckie is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

55.     Conner McAree is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

56.     Craig Comstock is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

57.     Dana Bassett is a resident of Georgia who is over the age of nineteen.

58.     David Alan Scheer is a resident of Dallas County, Texas who is over the age of nineteen.

59.     David Halloran is a resident of Wisconsin who is over the age of nineteen.

60.     David Lozzio is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

61.     David Mazzucco is a resident of Hampden County, Massachusetts who is over the age of nineteen.

62.     David Short is a resident of Cook County, Illinois who is over the age of nineteen.

63.     Delaney Clinger is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

64.     Devin Gallo is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

65.     Diane Rossi and Robert Rossi are out of state residents who are over the age of nineteen.

66.     Donna Haugh is an out of state resident who is over the age of nineteen.

67.     Douglas Martin is a resident of Georgia who is over the age of nineteen.

68.     Drake McClure is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

69.     Elisabeth Dunbar is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

70.     Emily Darden is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

71.     Emma Rice is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

72.     Erin Foley is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

73.     Frank Hurdle is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

74.     Gary Harnum is a resident of Middlesex County, Massachusetts who is over the age of nineteen.

75.     Geoffrey Sample is a resident of Duval County, Florida who is over the age of nineteen.

76.     Georganna Pate is an out of state resident who is over the age of nineteen.

77.     Grace Gilbert is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

78.     Greg Wantman is a resident of Broward County, Florida who is over the age of nineteen.

79.     Griffin Gabbert is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

80.     Hannah Forgay is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

81.     Hardage McAree is a resident of Washington, D.C. who is over the age of nineteen.

82.     Hayden Long is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

83.     Haylee Jones is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

84.     Heather Bradley is a resident of Pennsylvania who is over the age of nineteen.

85.     Helena Domenico is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

86.     Hope Rossi is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

87.     Hunter Haldimann is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

88.     Ian Capobian is a resident of Tuscaloosa, Alabama who is over the age of nineteen.

89.     Ian Walker is a resident of Maryland who is over the age of nineteen.

90.     Jackson McKell is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

91.     Jacqueline Darling is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

92.     Jakob Passov is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

93.     James Carney is a resident of Massachusetts who is over the age of nineteen.

94.     James Jackson is a resident of Fairfax County, Virginia who is over the age of nineteen.

95.     James Mackintosh is an out of state resident who is over the age of nineteen.

96.     Jeffrey Darling is an out of state resident who is over the age of nineteen.

97.     Jeffrey Hilliard is a resident of Effingham County, Georgia who is over the age of nineteen.

98.     Jeffrey McKell is a resident of Missouri who is over the age of nineteen.

99.     Jennifer and Dale Spurr are out of state residents who are over the age of nineteen.

100.   Jennifer Aron is an out of state resident who is over the age of nineteen.

101.   Jennifer Dibiasio is a resident of Rhode Island who is over the age of nineteen.

102.   Jennifer Diloreto is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

103.   Jennifer Edson is a resident of Pennsylvania who is over the age of nineteen.

104.   Jennifer Etkind is an out of state resident who is over the age of nineteen.

105.   Jennifer Lozzio and Christopher Lozzio are residents of Cook County, Illinois who are over the age of nineteen.

106.   Jeslyn Redcross is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

107.   Jessica Scheer is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

108.   Jessica Uriarte is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

109.   John Box is a resident of Mecklenburg County, North Carolina who is over the age of nineteen.

110.   John Brickley is a resident of Allegheny County, Pennsylvania who is over the age of nineteen.

111.   John Foley is an out of state resident who is over the age of nineteen.

112.   Jonathan Wood is an out of state resident who is over the age of nineteen.

113.   Joseph Cantore is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

114.   Joseph Mauro is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

115.   Joseph Michael Keough and Susan Keough are residents of Madison County, Alabama who are over the age of nineteen.

116.   Joseph Michel is a resident of Maryland who is over the age of nineteen.

117.   Joshua Holcomb is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

118.   Joshua Mansfield is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

119.   Josie Walker is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

120.   Julie Clinger is a resident of Cook County, Illinois who is over the age of nineteen.

121.   Karina Bratkov is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

122.   Kate Kizer is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

123.   Katrina Thilmony is a resident of Williamson County, Tennessee who is over the age of nineteen.

124.   Kayleigh Peterson is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

125.   Kayln Pate is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

126.   Keith Gabbert is an out of state resident who is over the age of nineteen.

127.   Kelly Hoffman is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

128.   Kelly Knapp is a resident of New Jersey who is over the age of nineteen.

129.   Kelly Moore is a resident of Cook County, Illinois who is over the age of nineteen.

130.   Kelsey Curl is a resident of Fairfax County in the Commonwealth of Virginia who is over the age of nineteen.

131.   Ken Shockley is an out of state resident who is over the age of nineteen.

132.   Kendall DeCocker is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

133.   Kerry Greeff is a resident of Fairfield County, Connecticut who is over the age of nineteen.

134.   Kevin James Hall is a resident of California who is over the age of nineteen.

135.   Kim Hatchett is a resident of Madison County, Tennessee who is over the age of nineteen.

136.   Kimberly and David Marotta are resident of Los Angeles County, California who are over the age of nineteen.

137.   Kimberly Atkins-Dailey is an out of state resident who is over the age of nineteen.

138.   Kimberly Curl is a resident of Fairfax County in the Commonwealth of Virginia who is over the age of nineteen.

139.   Kristen Glowacki is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

140.   Kristen Luckie and Vinnie Summers are out of state residents who are over the age of nineteen.

141.   Kristin Lester is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

142.   Kyle Knapp is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

143.   Laura Bridgewater is an out of state resident who is over the age of nineteen.

144.   Lauren Keough is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

145.   Layne Morton is a resident of Arkansas who is over the age of nineteen.

146.   Leticia Branco is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

147.   Linda Smith is an out of state resident who is over the age of nineteen.

148.   Lindsay Callahan is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

149.   Lindsay Martin is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

150.   Lisa Dale is an out of state resident who is over the age of nineteen.

151.   Lisa Rice is a resident of Pennsylvania who is over the age of nineteen.

152.   Liz Fetscher is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

153.   Logan Hodel is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

154.   Louise Bornhofen is a resident of Cook County, Illinois who is over the age of nineteen.

155.   Mackenzie Brickley is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

156.   Mackenzie Hall is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

157.   Mackenzie Setting is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

158.   Madalyn Frazior is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

159.   Madeline Short is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

160.   Madelyn Haugh is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

161.   Madison Horner is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

162.   Makenzie Maynard is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

163.   Mallory Smith is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

164.    Marc Mollere is a resident of Texas who is over the age of nineteen.

165.    Marcela Menegaz is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

166.    Maren Gregg is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

167.    Margaret Goodwin is a resident of Lake County, Illinois who is over the age of nineteen.

168.    Mariko Redcross is a resident of Colbert County, Alabama who is over the age of nineteen.

169.    Marissa Dunlap is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

170.    Mark McKinnon is a resident of San Diego County, California who is over the age of nineteen.

171.    Marley Bennett is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

172.    Martha Collins is an out of state resident who is over the age of nineteen.

173.    Mary Cherchio is a resident of New Jersey who is over the age of nineteen.

174.   Mason Wilson is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

175.   Matthew Gilbert is an out of state resident who is over the age of nineteen.

176.   Matthew Greeff is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

177.   Matthew Jones is a resident of San Joaquin County, California who is over the age of nineteen.

178.   Matthew Messer is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

179.   Matthew Roy is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

180.   Max Kinsbruner is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

181.   Megan Harnum is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

182.   Megan Huether is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

183.   Meghan Carney is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

184.   Melanie Masino is an out of state resident who is over the age of nineteen.

185.   Melissa Dufflock is an out of state resident who is over the age of nineteen.

186.   Meredith Claunch is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

187.   Mia Box is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

188.   Michael Ban is an out of state resident who is over the age of nineteen.

189.   Michael Boggan is a resident of Alabama who is over the age of nineteen.

190.   Michael Ferranti (son) is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

191.   Michael Ferranti (father) is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

192.   Michael Rogers is a resident of Winnebago County, Illinois who is over the age of nineteen.

193.   Michael Rowles and Amy Hunter are residents of New York who are over the age of nineteen.

194.   Michaela Corcoran is an out of state resident who is over the age of nineteen.

195.   Michelle Bedgood is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

196.   Michelle Smith is an out of state resident who is over the age of nineteen.

197.   Molly Moore is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

198.   Nancy Butler is a resident of Sacramento County, California who is over the age of nineteen.

199.   Nancy Forgay is an out of state resident who is over the age of nineteen.

200.   Natalie Conte is a resident of Virginia who is over the age of nineteen.

201.   Nathan Dailey is a resident of Tuscaloosa County, Alabama who is over the age on nineteen.

202.   Nicholas Dibiasio is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

203.   Nicholas Georgas is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

204.   Nicholas Mazzucco is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

205.    Norah O'Malley is resident of Cook County, Illinois who is over the age of nineteen.

206.    Norma Arnold is an out of state resident who is over the age of nineteen.

207.    Norman David Eadie is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

208.    Oliver Rowles is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

209.    Paige Mollere is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

210.    Pamela Booth is an out of state resident who is over the age of nineteen.

211.    Parker Goodwin is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

212.    Patrick Hoffman is a resident of Montgomery County, Pennsylvania who is over the age of nineteen.

213.    Paul Callahan is an out of state resident who is over the age of nineteen.

214.    Rachel Dwyer is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

215.    Randin Kinsbruner is a resident of Los Angeles County, California who is over the age of nineteen.

216.   Raquel Gallo is a resident of Pasco County, Florida who is over the age of nineteen.

217.   Raymond Baumruk is a resident of Lake County, Illinois who is over the age of nineteen.

218.   Reagan Garner is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

219.   Reagan Wantman is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

220.   Rebekkah Matheny is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

221.   Renee Antognoli is a resident of California who is over the age of nineteen.

222.   Renee Uriarte is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

223.   Rhonda Dwyer is a resident of Kane County, Illinois who is over the age of nineteen.

224.   Rhonda Wylie is a resident of Haralson County, Georgia who is over the age of nineteen.

225.   Robbin Spinner is a resident of Georgia who is over the age of nineteen.

226.   Robert Dunlap is an out of state resident who is over the age of nineteen.

227. Robert Horner is an out of state resident who is over the age of nineteen.

228. Robin Garner is a resident of Bexar County, Texas who is over the age of nineteen.

229. Robyn Butler is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

230. Ryan Louis Bornhofen is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

231. Ryan Shockley is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

232. Sahara Allen is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

233. Samuel Lilly is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

234. Sarah Edson is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

235. Sarah Hammers is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

236. Scott And Denise Holcomb are residents of Hartford County, Maryland who are over the age of nineteen

237.   Scott Dunbar is a resident of Sacramento County, California who is over the age of nineteen.

238.   Scott Setting is an out of state resident who is over the age of nineteen.

239.   Shannon O'Malley is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

240.   Sheila Eadie is a resident of Los Angeles County, California who is over the age of nineteen.

241.   Shelby Etkind is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

242.   Shelby Hatchett is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

243.   Spencer Baumruk is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

244.   Spencer Smith is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

245.   Spencer Wood is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

246.   Stacey Hoffman and Patrick Hoffman are residents of Montgomery County, Pennsylvania who are over the age of nineteen.

247.   Staci Frazior is an out of state resident who is over the age of nineteen.

248.   Steven Conte is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

249.   Steven Mauro is a resident of Cobb County, Georgia who is over the age of nineteen.

250.   Susan Keough is a resident of Madison County, Alabama who is over the age of nineteen.

251.   Susan Passov is an out of state resident who is over the age of nineteen.

252.   Suzanne Marie Lilly is a resident of Kane County, Illinois who is over the age of nineteen.

253.   Sydney Morton is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

254.   Talia Marotta is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

255.   Tanner Salhus is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

256.   Taryn Grande is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

257.   Teresa Diloreto is a resident of Duval County, Florida who is over the age of nineteen.

258.   Thomas Brian Bennett is a resident of Shelby County, Tennessee who is over the age of nineteen.

259.   Thomas McHugh is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

260.   Thomas C. McHugh is a resident of Massachusetts who is over the age of nineteen.

261.   Timothy Matheny is a resident of Escambia County, Alabama who is over the age of nineteen.

262.   Troy Smith is an out of state resident who is over the age of nineteen.

263.   Tyler Bassett is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

264.   Tyler Jackson is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

265.   Vinnie Summers is an out of state resident who is over the age of nineteen.

266.   Vladimir Bratkov is an out of state resident who is over the age of nineteen.

267.   Walker Basham is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

268.   Wendy Kizer is a resident of Texas who is over the age of nineteen.

269.   William Dimsdale is a resident of Hillsborough County, Florida who is over the age of nineteen.

270.   William Glowacki is a resident of Georgia who is over the age of nineteen.

271.   Yemi Yilma is an out of state resident who is over the age of nineteen.

272.   Yuging Chen Peterson is an out of state resident who is over the age of nineteen.

273.   Zak Semere is a resident of Tuscaloosa County, Alabama who is over the age of nineteen.

### Subcontractor Defendants

274.   The following defendants were contracted as subcontractors by Amason to perform work in Tuscaloosa, Alabama and did in fact perform work in Tuscaloosa, Alabama that in at least part, has been implicated by the Tenant Defendants in the underlying litigation related to The Hub.

275.   American Flooring Services, Inc is a Georgia corporation with its headquarters and principal place of business in Powder Springs, Georgia.

276.   Aqua One, LLC is a Texas limited liability corporation with its headquarters and principal place of business in Nederland, Texas.

277.   Blake Solutions, Inc. is a Tennessee corporation with its headquarters and principal place of business in Memphis, Tennessee.

278. Cheyanne Contracting, Inc is an Alabama company with its headquarters and principal place of business in Tuscaloosa, Alabama.

279. Classic Commercial Exteriors, Inc. is a Georgia corporation with its headquarters and principal place of business in Albany, Georgia.

280. Decorating & Coating Applications, Inc. is an Alabama corporation with its headquarters and principal place of business in Trussville, Alabama.

281. Fire & Life Safety of America, Inc. is a Virginia corporation with its headquarters and principal place of business in Richmond, Virginia.

282. Hallway Plumbing, LLC is a Georgia limited liability corporation with its headquarters and principal place of business in Cumming, Georgia.

283. JPO Contractors, Inc. is an Alabama corporation with its headquarters and principal place of business in Tuscaloosa, Alabama.

284. KLW Construction, Inc is an Alabama corporation with its headquarters and principal place of business in Northport, Alabama.

285. Metal Roofing Solutions, Inc. is an Alabama corporation with its headquarters and principal place of business in Duncanville, Alabama.

286. Mid South Floor Systems, Inc. is a Tennessee corporation with its headquarters and principal place of business in LaVernge, Tennessee.

287. Motus Construction, LLC is an Illinois limited liability corporation with its headquarters and principal place of business in Chicago, Illinois.

288.   Parker Engineering & Mechanical, Inc. is a Georgia corporation with its headquarters and principal place of business in Norcross, Georgia.

289.   Premier Service Company, Inc. is an Alabama corporation with its headquarters and principal place of business in Tuscaloosa, Alabama.

## Insurance Carrier Defendants

290.   The following defendants are insurance companies that issued insurance policies to the Subcontractor Defendants and certificates of insurance that named Amason and Core as additional insureds. Each carrier independently owes a defense obligation to Amason and Core as additional insureds but have failed to fully participate in the defense of Amason and Core which has caused Amerisure to incur defense costs that Subcontractor Defendants or their insurance carriers should have paid.

291.   Acadia Insurance Company is a Maine insurance company. It is headquartered and has its principal place of business in Westbrook, Maine.

292.   ACE American Insurance Company is a Pennsylvania insurance company. It is headquartered and has its principal place of business in Philadelphia, Pennsylvania.

293.   American Builders Insurance Company is a Georgia insurance company. It is headquartered and has its principal place of business in Atlanta, Georgia.

294. Arch Specialty Insurance Company is a New Jersey insurance company. It is headquartered and has its principal place of business in Jersey City, New Jersey.

295. Auto Owners Insurance Company is a Michigan insurance company. It is headquartered and has its principal place of business in Lansing, Michigan.

296. Axis Surplus Insurance Company is a Georgia insurance company. It is headquartered and has its principal place of business in Atlanta, Georgia.

297. Brit Global Specialty USA is an Illinois insurance company. It is headquartered and has its principal place of business in Chicago, Illinois.

298. Continental Western Insurance Company ("CWIC") is an Iowa insurance company. It is headquartered and has its principal place of business in Urbandale, Iowa.

299. FCCI Insurance Company is a Florida insurance company. It is headquartered and has its principal place of business in Sarasota, Florida.

300. Nationwide Property & Casualty Insurance Company is an Ohio insurance company. It is headquartered and has its principal place of business in Columbus, Ohio.

301. Ohio Security Insurance Company is an Ohio insurance company. It is headquartered and has its principal place of business in Fairfield, Ohio.

302.   Starr Indemnity Insurance Company is a New York insurance company. It is headquartered and has its principal place of business in New York City, New York.

303.   Underwriters at Lloyd's of London is a New York insurance syndicate. It is domiciled in England, but headquartered and has its principal place of business in New York City, New York.

304.   United Specialty Insurance Company is a Texas insurance company. It is headquartered and has its principal place of business in Bedford, Texas.

305.   U.S. Specialty Insurance Company is a Texas insurance company. It is headquartered and has its principal place of business in Houston, Texas.

306.   United Fire & Casualty Company is an Iowa insurance company. It is headquartered and has its principal place of business in Cedar Rapids, Iowa.

## <u>INTRODUCTION</u>

307.   This is a declaratory judgment action in three parts. The first part seeks a declaration of Amerisure's duty to defend and indemnify its named insured Amason for claims asserted by the Tenant Defendants for defective work, intentional conduct, and mold allegedly attributed to Amason's work as a general contractor on a luxury student apartment known as The Hub located in Tuscaloosa, Alabama.

308.   The second part of this action seeks a declaration regarding Amerisure's duties and obligations to defend Core Tuscaloosa 519-611 Red Drew,

LLC, and Core Campus, LLC d/b/a Core Spaces, (collectively referred to as "Core") as additional insureds on the Amerisure policies issued to Amason for claims unrelated to Amason's work, as well as for claims related to defective work, intentional conduct, and mold.

309.   In the third and final part of this declaratory judgment, Amerisure seeks a declaration that Amason and Core are additional insureds on Subcontractor Defendants policies issued by Insurance Carrier Defendants and obligated to defend and Amason and Core in the Tenant Lawsuits and to reimburse Amerisure for monies incurred by it in defending Core and Amason from claims arising out of the Subcontractor Defendants' faulty work.

## JURISDICTION

310.   Jurisdiction is conferred by 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

311.   In this action, Amerisure seeks a judicial determination of its rights and obligations where the demand in the underlying suit is in excess of $4,000,0000. In addition, Amerisure seeks reimbursement of $312,658.07 that it has spent for the defense of Amason and seeks reimbursement in the amount of $175,871.91 for monies paid to date for the defense of Core, totaling $488,529.98 which it has already been paid by Amerisure.

312.   Venue is proper in the Northern District of Alabama because the Amerisure policies were issued by Amerisure to Amason in Tuscaloosa, Alabama.

In addition, The Hub construction project, which is the basis for the underlying litigation, is located in Tuscaloosa, Alabama. All contracts were issued in Tuscaloosa, Alabama and all work at issue in the underlying case was performed in Tuscaloosa, Alabama.

## FACTS

313.   Core Campus, LLC (and its related entities) is the owner, operator, developer, and property manager of a luxury student apartment building in Tuscaloosa, Alabama, known as The Hub. The Hub is located near the University of Alabama and provides high-end apartment rentals to university students.

314.   Defendant Amason is a construction company located in Tuscaloosa, Alabama. Core hired Amason on December 16, 2016, to be its general contractor for the construction of The Hub. A copy of the contract is attached as Exhibit 1.

315.   Pursuant to Section 15.6.1, along with Article 11.1.2 and 11.1.4 of the construction contract between Amason and Core, Amason was required to provide liability insurance coverage that named Core and certain of its related entities[2] as additional insureds for claims caused in whole or in part by Amason's act or omissions during the course of Amason's operations.

---

[2] Core Campus, LLC and Core Tuscaloosa 519-611 Red Drew, LLC, and Core Tuscaloosa 319 Grace, LLC

316.   Amason procured liability insurance that named Core Campus, LLC and Core Tuscaloosa 519-611 Red Drew, LLC, along with Core Tuscaloosa 319 Grace, LLC[3] as additional insureds on Amason's commercial general liability insurance policy issued to it by Amerisure.

317.   Core's contract with Amason also required Amason to procure insurance that named Core as an additional insured for completed operations coverage, which was also provided in the Amerisure policy.

318.   Further, each Subcontractor Defendant hired by Amason was required to purchase insurance for the protection of Amason and Core and that named Amason and Core as the owner as an additional insured for any claims that arose from the Subcontractor Defendant's work.  Every Subcontractor Defendant that performed services on The Hub project provided certificates of insurance to Amason as proof that the required insurance had been purchased before they were allowed to begin work, and that the respective policies named Amason and all Core entities as additional insureds.

319.   A temporary Certificate of Occupancy was issued by the City of Tuscaloosa, Alabama on August 3, 2018. Student/tenants moved in shortly afterwards, and almost immediately, tenants began complaining about numerous

---

[3] Core Tuscaloosa 319 Grace, LLC has not been named in the lawsuits.

problems, ranging from poor Wi-Fi connectivity to sewage backup and uncompleted work.

320. On February 8, 2019, the first of more than nine lawsuits involving approximately 280 individual tenants was filed in the Circuit Court of Tuscaloosa County, Alabama, in a suit styled *McLane Rosen and Jess Rosen v. Core Tuscaloosa 519-611 Red Drew, LLC; Core Campus, LLC d/b/a Core Spaces; Core Campus Developer-Tuscaloosa, LLC; City of Tuscaloosa;* 63-cv-2018-901389. A copy of the *Rosen* Amended Complaint is attached as Exhibit 2. The *Rosen* Amended Complaint contained allegations against Core and Amason jointly, as well as three separate counts solely against Core that were not related to the construction of The Hub.  (the nine lawsuits are collectively referred to as the "Tenant Lawsuits").

## Amerisure's Defense of Core

321. Since the filing of the first lawsuit, Core has tendered its defense to Amerisure. Amerisure as accepted the tender and agreed to defend Core as an additional insured in the Tenant Lawsuits while fully reserving its rights to later decline coverage and/or seek a judicial determination of its rights and obligations to Core under the Amerisure policies.

312. Core has taken the position that Amerisure owes coverage for *all* the claims against it, even those claims that are made exclusively against Core for issues unrelated to the project. Amerisure adamantly denies that it has any obligation to

defend Core for claims that are made exclusively against Core and do not arise from Amason's work. As a result, a substantial justiciable controversy exists between Amerisure and Core.

313.   In this declaratory judgment action, Amerisure seeks a judicial determination of whether any coverage is owed to Core as an additional insured on the Amason policy for claims that are not related to Amason's work or which are otherwise excluded by the policies.

## **Amason**

314.   Amerisure has provided a defense to Amason in the Tenant Lawsuits pursuant to a full reservation of rights.   Amerisure seeks a declaration of its obligations to defend and indemnify Amason. All the complaints in the Tenant Lawsuits assert claims for defective work that would not qualify as an "occurrence" under the Amerisure policy. Further, many of the remaining claims asserted against Amason allege intentional conduct or are specifically excluded under various policy exclusions and endorsements. Therefore, a substantial justiciable controversy exists between Amerisure and Amason regarding Amerisure's duty to defend Amason.

## **Subcontractor Defendants and their Insurance Carriers**

315.   As the general contractor on The Hub project, Amason contracted with numerous subcontractors to perform various specific scopes of work. Pursuant to the terms of each subcontractor agreement, Subcontractor Defendants were obligated to

name Amason and Core as additional insureds under the respective subcontractor's CGL policy and afford coverage for any claims that arose from that subcontractor's work.

316.   Since the filing of the Tenant Lawsuits, Amason has tendered its defense and the defense of Core to the Subcontractor Defendants whose work has been implicated in the litigation. While Amerisure has been providing a defense to Core and Amason, nearly every subcontractor and its insurance carrier has failed and/or refused to defend Amason and Core for claims related to the each of the subcontractors' specific scope of work. This has required Amerisure to incur the significant cost of defense that should have been paid by Subcontractor Defendants and/or their insurance carriers. Other carriers have acknowledged their coverage obligation to Amason, but have failed to reimburse Amerisure their share of defense costs on in a timely manner which Amason claims has significantly prejudiced its defense of the Tenant Lawsuits.

317.   Amerisure seeks a declaration that the Subcontractor Defendants and their carriers owe a defense to Amason and Core in the Tenant Lawsuits and that Amerisure is entitled to reimbursement for the amounts paid in the defense of Amason and Core in the Tenant Lawsuits.

## INSURANCE

318.   Amason is insured under Amerisure Insurance Company Policy CPP21093210001. A copy of the policy is attached as Exhibit 3.  This policy went into effect at 12:01 am on July 10, 2018, and remained in force until July 10, 2019. The policy provides $1 million per occurrence with an aggregate limit of $2 million. In addition, Amason has a $5 million umbrella policy with Amerisure Mutual Insurance Company Policy CU 2109320002. A copy of this policy is attached as Exhibit 4. The Amerisure CPP and CU policies are collectively referred to as the "Amerisure Policy")

## **Primary**

319.   The relevant portions of the Commercial General Liability Coverage Form CG 00 01 (04/13) are set out below:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:
**(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";**

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence"

or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2.     Exclusions**
This insurance does not apply to:

**a.     Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.     Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**j.     Damage To Property**
"Property damage" to:
**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## SECTION IV – GENERAL LIABILITY CONDITIONS

**4.** **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b.** **Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work"

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self- insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

## SECTION V – DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**21.** "Your Product":

    **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

The Amerisure policy includes the following potentially applicable endorsements:

**BODILY INJURY DEFINITION MODIFICATION, CG 71 34 04 05**

**SECTION V - DEFINITIONS**, Item **3.** "Bodily injury" is deleted and replaced with the following:

**3.** "Bodily injury"

    **a.** Means physical:

        **(1)** Injury;
        **(2)** Disability;
        **(3)** Sickness; or
        **(4)** Disease;

    sustained by a person, including death resulting from any of these at any time.

    **b.** Includes mental:

        **(5)** Anguish;
        **(6)** Injury;
        **(7)** Humiliation;
        **(8)** Fright; or
        **(9)** Shock;

    sustained by a person who has sustained any "bodily injury" described in paragraph **3.a.**, provided that any "bodily injury" described in paragraph **3.b.** results directly from any "bodily injury" described in paragraph **3.a.**

    **c.** All "bodily injury" described in paragraph **3.b.** shall be deemed to have occurred at the time the "bodily injury" described in paragraph **3.a.** occurred.

**FUNGI OR BACTERIA EXCLUSION, CG 21 67 (12 04)**

**COMMERCIAL LIABILITY COVERAGE PART**

   **A.**  The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property damage Liability:**

      **2.**  **Exclusions**

      This insurance does not apply to:

      **FUNGI OR BACTERIA**

        **a.**  Bodily injury or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        **b.**  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   **C.**  The following definition is added to the **Definitions** Section:

      "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**DAMAGES ARISING OUT OF YOUR WORK CG 71 68 (02 08)**

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**  **Insuring Agreement** is amended to add the following:

   **f.**  We will pay for damages you are legally obligated to pay because of "property damage" to "your work" resulting from work performed on your behalf by any subcontractor which shall be deemed an "occurrence", but only if:

      **(1)**  the work performed by the subcontractor is within the "products-completed operations hazard" and

      **(2)**  the "property damage" is unexpected and unintended by you.

   We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

**2.**  **Exclusion l** is replaced by the following:

   **l.**  **Damage To Your Work**

      "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

      This exclusion does not apply to "property damage" to "your work" resulting from work performed on your behalf by a subcontractor and included in the "product-completed operations hazard".

This endorsement applies only to you and no other party.

*                    *                    *                    *                    *

320.   The Amerisure policy CPP21093210001 also includes the following

pertinent additional insured endorsements:

CONTRACTOR'S BLANKET ADDITIONAL INSURED ENDORSEMENT –
                                        FORM A                                        CG 70 48 10 15

1.   a.   SECTION II – WHO IS AN INSURED is amended to add as an additional insured any person or
organization:

(1)   Whom you are required to add as an additional insured on this policy under a written contract or written agreement
relating to your business; or

(2)   Who is named as an additional insured under this policy on a certificate of insurance.

      b.   The written contract, written agreement, or certificate of insurance must:
      (1)   Require additional insured status for a time period during the term of this policy; and

(2)   Be executed prior to the "bodily injury", "property damage", or "personal and advertising injury" leading to a
claim under this policy.

2.   The insurance provided under this endorsement is limited as follows:

h.   SECTION VI – COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 4. Other Insurance is
deleted and replaced with the following:

4.   Other Insurance.

Coverage provided by this endorsement is excess over any other valid and collectible insurance available to the
additional insured whether:

a.   Primary;

b.   Excess;

c.   Contingent; or

d.   On any other basis;

      but if the written contract, written agreement, or certificate of insurance requires primary or non-contributory
coverage, this insurance will be primary and non-contributory relative to other insurance available to the additional
insured which covers that person or organization as Named Insured, and we will not share with that other insurance.

i.   If the written contract, written agreement, or certificate of insurance as outlined above requires additional insured
status by use of CG 20 10 11 85, then the coverage provided under this CG 70 48 endorsement does not apply except
for paragraph 2.h.Other Insurance.  Additional insured status is limited to that provided by CG 20 10 11 85 shown
below and paragraph 2.h.Other Insurance shown above.

      *                    *                    *                    *                    *

**ADDITIONAL INSURED – OWNERS, LESSEES OR
CONTRACTORS (FORM B)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization:** Blanket Where Required by Written Contract, Agreement, or Certificate of
Insurance that the terms of CG 20 10 11 85 apply

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as
applicable to this endorsement.)

WHO IS AN INSURED (SECTION II) is amended to include as an insured the person or organization shown in the
Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

**CG 20 10 11 85**      Copyright, Insurance Services Office, Inc., 1984

# <u>Umbrella Coverage</u>

321.   The umbrella policy issued by Amerisure Mutual Insurance Company
to Amason contains the following relevant language:

**COMMERCIAL LIABILITY UMBRELLA
CU00 01 04 13**

**COMMERCIAL LIABILITY  UMBRELLA  COVERAGE  FORM**

**SECTION I-COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because
of "bodily injury" or "property damage" to which this insurance applies. We will have the right and
duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property
damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance"
have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate
in the defense of, the insured against any other "suit" seeking damages to which this insurance may
apply. However, we will have no duty to defend the insured against any "suit" seeking damages for
"bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we
may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit"
for which we have the duty to defend. But:

     **(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III**– Limits Of
Insurance; and

     **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the
payment of judgments or settlements under Coverages **A or B.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly
provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained
limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does
not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified

in the Declarations under the Schedule of "underlying insurance".

***

### 2. Exclusions

This insurance does not apply to:

#### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

#### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

#### m. Damage To Property

"Property damage" to:

(1) Property:

  (a) You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

  (b) Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)(b), (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

#### n. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## SECTION II - WHO IS AN INSURED

1. Except for liability arising out of the ownership, maintenance or use of "covered autos":

\*\*\*

3. Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section III - Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

a. Required by the contract or agreement, less any amounts payable by any "underlying insurance" or

b. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

\*\*\*

## SECTION IV – CONDITIONS

\*\*\*

**5. Other Insurance**

a. This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

b. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used

or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

    **g.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

13.  "0ccurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.  "Products-completed operations hazard":

    a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b.  Does not include "bodily injury" or "property damage" arising out of:

        (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

        (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

18.  "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

27. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

28. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

*           *           *           *           *           *           *

COMMERCIAL LIABILITY UMBRELLA
CU 21 27 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2.** Exclusions

    This insurance does not apply to:

    FUNGI OR BACTERIA

    **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed con- currently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2.** Exclusions

    This insurance does not apply to:

    FUNGI OR BACTERIA

    **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed con- currently or in any sequence to such injury.

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

  "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

     \*          \*          \*          \*          \*          \*          \*

COMMERCIAL  LIABILITY  UMBRELLA
CU 76 08 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BODILY  INJURY  DEFINITION  MODIFICATION**

**All other terms, provisions, exclusions, and limitations of the policy apply except as specifically stated below.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

**SECTION V - DEFINITIONS,** Item **3.** "Bodily injury" is deleted and replaced with the following:

**3.**   "Bodily injury"

   **a.**   Means physical:

      **(1)**  Injury;
      **(2)**  Disability;
      **(3)**  Sickness; or
      **(4)**  Disease;

      sustained by a person, including death resulting from any of these at any time.

   **b.**   Includes mental:

      **(1)**  Anguish;
      **(2)**  Injury;
      **(3)**  Humiliation;
      **(4)**  Fright; or
      **(5)**  Shock;

      sustained by a person who has sustained any "bodily injury" described in paragraph **3.a.,** provided that any "bodily injury" described in paragraph **3.b.** results directly from any "bodily injury" described in paragraph **3.a.**

   **c.**   All "bodily injury" described in paragraph **3.b.** shall be deemed to have occurred at the time the "bodily injury" described in paragraph **3.a.** occurred.

## The Tenant Lawsuits

322.   The Tenant Lawsuits compromise a total of nine separate complaints filed by tenants and lessees against Core and Amason for problems related to The Hub apartment building. The nine complaints assert essentially identical allegations. Generally, each complaint alleges the following relevant and common allegations:

In accordance with Alabama Code § 8-19-10(e), Plaintiffs have provided notice of their claims and a written demand that Defendants remedy all such wrongdoing; accordingly, Plaintiffs seek full relief under the Alabama Deceptive Trade Practice Act, including an award of costs and attorneys' fees.

More specifically, the Plaintiffs' apartment units had the following issues: a) sheetrock dust and mud were present throughout; b) the promised "wood style flooring" was missing sections and damages; c) the HVAC system had not been properly installed; d) the promised, stainless steel appliances were missing, and the ones that were present, were not installed; e) sewage debris in the shower; and f) holes in the sheetrock with live wires exposed.

Within the first week of occupancy, the Plaintiffs' apartment units were without hot water for multiple days.

The Plaintiffs' apartment units were, at times, without any running water, as plumbing repairs were being performed throughout The Hub.

The Plaintiffs' apartment units continue to have the following issues: a) a compact refrigerator/freezer without an icemaker; b) no gate limiting access to the parking garage; c) insufficient insulation for interior walls; d) the furniture is not new; e) the flooring is scratched; and f) the thermostat does not function properly.

Additionally, the complex amenities and common spaces remained unfinished upon move-in.

Promised amenities, such as rooftop pool, state-of-the-art fitness center with virtual trainer, steam room, sauna, and tanning room, remained unfinished for approximately one (1) move after move-in.

The Hub has had, and continues to have, issues involving plumbing leaks, water intrusion, mold growth, and other construction defects.

As a result of The Hub not being completed upon move-in and the City of Tuscaloosa allowing tenants to move into an unfinished building, the common areas throughout The Hub have been active construction sites, with debris and construction equipment frequently present.

On September 20, 2018, the City of Tuscaloosa visited The Hub and photographed numerous deficient items including, but not limited to, the following:  construction materials present in the common spaces, ongoing drywall repairs within specific units, tents over patios due to water intrusion, unsealed ceilings, unpainted walls, loose ceiling tiles, trash build-up in the designated trash cute, and perforated fore walls, among others.

Tenants of The Hub have reported sexual harassment and theft from members of the contractors' and sub-contractors' construction crews.

These construction workers, including employees and/or agents of Core Defendants, entered into the Plaintiffs' apartment units on multiple occasions at the direction of Core Defendants without consent or notice to the tenants.

Plaintiffs have incurred and will continue to incur serious health issues as a result of the duct, debris, air quality, and mold within The Hub and Plaintiffs' apartment units.

Plaintiffs has been treated by a physician on multiple occasions for respiratory ailments caused by the potential mold and air quality problems within The Hub and Plaintiffs' apartment units.

Over the course of their lease agreement, the Plaintiffs have been continuously misled by Defendants as to the health and safety of the Plaintiffs' apartment units.

Further, the Plaintiffs have been continuously misled by the Core Defendants as to the quality of The Hub and its units, and The Hub and the Plaintiffs' apartment units were not delivered in the condition warranted on the move-in date contained in the lease.

During the past year, Core Defendants misrepresented and/or suppressed information related to the condition and quality of The Hub and the Plaintiffs' apartment units and their ability to deliver the units when promised.

The Plaintiffs have paid in excess of the fair rental value for the Plaintiffs' apartment units.

In addition to their monetary losses, the Plaintiffs have suffered and continue to suffer mental anguish and emotional distress as a result of the Defendants' actions and/or omissions.

\*          \*          \*          \*          \*          \*

323.     In each of the nine complaints, the Plaintiffs allege seven (7) separate causes of action in the complaint. The counts in the complaints are as follows:

Count I:     Violation of the Alabama Uniform Residential Landlord and Tenant Act

Count II:     Violation of the Alabama Deceptive Trade Practices Act

Count III:     Negligence and Wantonness

Count IV:     Fraud & Suppression

Count V:     Breach of Contract

Count VI:     Negligent and/or Reckless Training, Supervision, and Retention

Count VII:     Unjust Enrichment

324.   Three of the counts in the lawsuits filed by Tenants are solely against Core. (Count II – Ala. Deceptive Trade Practices Act; Count IV – Fraud and Suppression; Count V – Breach of Contract).

325.   Amerisure has provided a defense to Amason, its Named Insured, and Core, as an additional insured under the Amerisure Policy subject to a full

reservation of rights to seek a coverage determination and/or deny coverage and withdraw from the defense at any time in the future.

## CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT
(Core entities)

326.  Amerisure seeks a judicial determination of its obligations, if any, owed to Core as an additional insured under the Amerisure Policies issued to Amason for the Tenant Lawsuits, including those claims unrelated to Amason's work.

327.  While Amerisure acknowledges that Core is an additional insured for claims that arose out of Amason's work, as an additional insured, the same definitions, limitations, and exclusions that apply to Amason would also be binding on Core.

328.  Further, many of the claims against Core do not relate to Amason's construction work, but rather to Core's role as the developer and manager of The Hub. For example, the plaintiffs in the Tenant Lawsuits allege violations of the Alabama Uniform Residential Landlord and Tenant Act, Alabama Deceptive Trade Practices Act, and fraud and suppression *only* against Core, and not Amason.

329.  Amerisure seeks a declaration by this Court that the Amerisure Policies does not provide additional insured coverage to Core for the claims

asserted in the Tenant Lawsuits against Core that do not arise out of Amason's work.

330.   In addition, Amerisure asks this Court to declare that the Amerisure Policies does not provide additional insured coverage to Core that is broader in scope to coverage provided under the Amerisure Policies for Amerisure's Named Insured Amason.

## COUNT II– DECLARATORY JUDGMENT
### (Amason)

311.   Amerisure seeks a judicial determination of its obligations under the Amerisure Policies issued to Amason for the allegations asserted in the Tenant Lawsuits against Amason related to the construction of The Hub project.

332.   Alabama law dictates that defective construction is not an "occurrence" under a commercial general liability policy like the one it issued to Amason.

333.   Further, there is no coverage under the Amerisure Policies for claims asserted in the Tenant Lawsuits related to fungi and mold pursuant to the Fungi or Bacteria Exclusion, CG 21 67 12 04 on the Amerisure Policy.

334.   Finally, Amerisure has no duty to defend or indemnify Amason for those claims involving Amason's intentional conduct because they do not involve an "occurrence" as defined by the Amerisure Policies or are otherwise excluded under various policy exclusions and endorsements.

## COUNT III – COMMON LAW INDEMNTIY
(Subcontractor Defendants and their insurance carriers)

335.   Amerisure seeks a declaration that Subcontractor Defendants are obligated to defend Amason and Core in the Tenant Lawsuits and to reimburse Amerisure its defense costs, fees, and expenses incurred to date under the principles of common law indemnity.

336.   In addition, each of the subcontracts requires that Amason and Core be named as an additional insured under each of the subcontractors' insurance policies.   The defense of Amason and Core has been tendered to each of the Subcontractor Defendants, and now their insurance carriers have an obligation to defend and indemnify Amason and Core for all claims that arise from their respective subcontractor insureds' work and Amerisure is entitled to be reimbursed for the sums it has paid that are owed by each of the subcontractors and their insurance carriers.

## COUNT IV – CONTRACTUAL INDEMNITY
(Subcontractor Defendants)

337. Amerisure seeks reimbursement of defense costs, fees, and expenses incurred in defense of Amason and Core that the Subcontractor Defendants are required to pay pursuant to the terms of its subcontracts with Amason.

338.  Likewise, because Amason and Core are additional insureds under each of the subcontractor agreements, each of the subcontractors and their insurance carriers are contractually required to defend and indemnify Amason and Core for all costs arising from each of the subcontractors' work.

## COUNT V – EQUITABLE CONTRIBUTION
### (Subcontractor Defendants)

339.  Amerisure seeks the reimbursement of defense costs, fees, and expenses incurred in defense of Amason and Core that the Subcontractor Defendants are required to pay pursuant to the terms of their contracts with Amason under the principles of equitable contribution.

## COUNT VI – SUBROGATION

340.  As a result of paying for the defense of Amason and Core in The Hub litigation, Amerisure is now subrogated to recover those sums incurred in the defense of Amason and Core that are owed by the Subcontractor Defendants. To the extent that any of the Subcontractor Defendants have not defended Amason and Core for allegations arising from their work, Amerisure is subrogated to its insured Amason, and is entitled to recovery of what was paid on Amason's behalf.

## PRAYER FOR RELIEF

341.  A declaration by this Honorable Court of any defense obligations Amerisure owes to Core.

342.     A declaration by this Honorable Court of any defense obligations Amerisure owes to Amason.

343.   That this Honorable Court order the Subcontractor Defendants to reimburse Amerisure for the sums it incurred in defense of Amason and Core that are owed by the Subcontractor Defendant.

344.   That this Honorable Court declare that Amason and Core are additional insured under Insurance Carrier Defendants policies issued to Subcontractor Defendants and required to reimburse Amerisure all of the sums it incurred in the defense of Amason and Core that it should have paid as a result of Amason's additional insured status under the policies issued to their respective insured subcontractors.

345.     That this Honorable Court order any additional relief it deems necessary in the interest of justice and equity.

Respectfully submitted,

/s/ Kile T. Turner
Kile T. Turner

OF COUNSEL:
Norman, Wood, Kendrick & Turner
Ridge Park Place
1130 22nd Street South
Suite 3000
Birmingham, Alabama  35205
Tel:   (205) 328-6643
Fax:   (205) 251-5479
Direct Line:  (205) 259-1033
Email:  kturner@nwkt.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Amason & Associates, Inc.
c/o Robert Amason, Jr.
1857 Commons North Dr.
Tuscaloosa, AL 35406

Core Tuscaloosa 5199-611 Red Drew, LLC
c/o National Registered Agents, Inc.
57 Adams St.
Montgomery, AL 36104

Core Campus, LLC d/b/a Core Spaces
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

| | | |
|---|---|---|
| | Jacqueline Darling | Melanie Masino |
| Abigail Aron | Jakob Passov | Melissa Dufflock |
| Adam Abrams | James Carney | Meredith Claunch |
| Albert Hurdle | James Jackson | Mia Box |
| Alexa Cherchio | James Mackintosh | Michael Ban |
| Alexander Davis | Jeffrey Darling | Michael Boggan |
| Alexander Spurr | Jeffrey Hilliard | Michael Ferranti |
| Alexandra Halloran | Jeffrey Mckell | Michael Ferranti |
| Alexandra Sample | Jennifer and Dale Spurr | Michael Rogers |
| Alexis Thilmony | Jennifer Aron | Michael Rowles |
| Alexis Wylie | Jennifer Dibiasio | Michaela Corcoran |
| Alivia Rogers | Jennifer Diloreto | Michelle Bedgood |
| Allison and Ian Haldimann | Jennifer Edson | Michelle Smith |
| Allison Spinner | Jennifer Etkind | Molly Moore |
| Amy Hunter | Jennifer Lozzio | Nancy Butler, |
| Anastasia Alexandrou | Jeslyn Redcross | Nancy Forgay |
| Andrew Antognoli | Jessica Scheer | Natalie Conte |
| Andrew Cantore | Jessica Uriarte | Nathan Dailey |

Andrew Glemser
Andrew Kaiser
Andrew Michel
Andrew Rossi
Anna Hilliard
Anna Marie Lee
Annah Gore
Anne Alexandrou
Anthony Grande
Armando Menegaz
Ashley Arnold
Ashley Gregg
Bailey Wertz
Barbara Ellias
Ben Smith
Beth Liebowitz
Bonnie Hammers
Bradie Ellias
Brendan Ban
Brent Basham
Brian And Lara Long
Briana Dinicola
Bryan Mcclure
Bryce Duggan
Callaway Mckinnon
Calli Smith
Calvert Smith
Cameron Mackintosh

Camryn Dimsdale
Carl Huether
Carol Guthrie
Carol Kaiser
Cassiddy Smith
Catherine Davis
Chandra Collin-Duggan
Christie Guthridge
Christina Gore

Christine Coffman

John Box
John Brickley
John Foley
Jonathan Wood
Joseph Cantore
Joseph Mauro
Joseph Michael Keough
Joseph Michel
Joshua Holcomb
Joshua Mansfield
Josie Walker
Julie Clinger
Karina Bratkov
Kate Kizer
Katrina Thilmony
Kayleigh Peterson
Kayln Pate
Keith Gabbert
Kelly Hoffman
Kelly Knapp
Kelly Moore
Kelsey Curl
Ken Shockley
Kendall DeCocker
Kerry Greeff
Kevin James Hall
Kim Hatchett
Kimberly and David
Marotta
Kimberly Atkins-Dailey
Kimberly Curl
Kristen Glowacki
Kristen Luckie
Kristin Lester
Kyle Knapp
Laura Bridgewater
Lauren Keough

Layne Morton
Leticia Branco

Nicholas Dibiasio
Nicholas Georgas
Nicholas Mazzucco
Norah O'Malley
Norma Arnold
Norman David Eadie
Oliver Rowles
Paige Mollere
Pamela Booth
Parker Goodwin
Patrick Hoffman
Paul Callahan
Rachel Dwyer
Randin Kinsbruner
Raquel Gallo
Raymond Baumruk
Reagan Garner
Reagan Wantman
Rebekkah Matheny
Renee Antognoli
Renee Uriarte
Rhonda Dwyer
Rhonda Wylie
Robbin Spinner
Robert Dunlap
Robert Horner
Robert Rossi

Robin Garner
Robyn Butler
Ryan Louis Bornhofen
Ryan Shockley
Sahara Allen
Samuel Lilly
Sarah Edson
Sarah Hammers
Scott and Denise
Holcomb
Scott Dunbar

Christine Glemser
Christopher Lozzio
Christopher Maynard
Colleen Luckie
Conner McAree
Craig Comstock
Dana Bassett
David Alan Scheer
David Halloran
David Lozzio
David Mazzucco
David Short
Delaney Clinger
Devin Gallo
Diane Rossi and Robert Rossi
Donna Haugh
Douglas Martin
Drake Mcclure
Elisabeth Dunbar
Emily Darden
Emma Rice
Erin Foley
Frank Hurdle
Gary Harnum
Geoffrey Sample
Georganna Pate
Grace Gilbert
Greg Wantman
Griffin Gabbert
Hannah Forgay
Hardage McAree
Hayden Long
Haylee Jones
Heather Bradley
Helena Domenico
Hope Rossi
Hunter Haldimann
Ian Capobianco
Ian Walker

Linda Smith
Lindsay Callahan
Lindsay Martin
Lisa Dale
Lisa Rice
Liz Fetscher
Logan Hodel
Louise Bornhofen
Mackenzie Brickley
Mackenzie Hall
Mackenzie Setting
Madalyn Frazior
Madeline Short
Madelyn Haugh
Madison Horner
Makenzie Maynard
Mallory Smith
Marc Mollere
Marcela Menegaz
Maren Gregg
Margaret Goodwin
Mariko Redcross
Marissa Dunlap
Mark McKinnon
Marley Bennett
Martha Collins
Mary Cherchio
Mason Wilson
Matthew Gilbert
Matthew Greeff
Matthew Jones
Matthew Messer
Matthew Roy
Max Kinsbruner
Megan Harnum
Megan Huether
Meghan Carney

Scott Setting
Shannon O'Malley
Sheila Eadie
Shelby Etkind
Shelby Hatchett
Spencer Baumruk
Spencer Smith
Spencer Wood
Stacey Hoffman
Staci Frazior
Steven Conte
Steven Mauro
Susan Keough
Susan Passov
Suzanne Marie Lilly
Sydney Morton
Talia Marotta
Tanner Salhus
Taryn Grande
Teresa Diloreto
Thomas Brian Bennett
Thomas C. Mchugh
Timothy Matheny
Troy Smith
Tyler Bassett
Tyler Jackson
Vinnie Summers
Vladimir Bratkov
Walker Basham
Wendy Kizer
William Dimsdale
William Glowacki
Yemi Yilma
Yuging Chen Peterson
Zak Semere

Jackson Mckell

Served through counsel Dustin Kittle
Humble Law, LLC
3112 Blue Lake Drive, #100
Birmingham, AL 35243

American Flooring Services, Inc.
c/o Juan Olvera, Registered Agent
6455 Southern Trace Dr.
Leeds, AL 35094
Aqua One, LLC
c/o Krin B. MacKenroth, Registered Agent
8145 Country Lane
Nederland, TX 77627

Blake Solutions, Inc.
c/o Wendy Dabbous
7985 Courtyard Plz. Ste 101
Memphis, TN 38119

Cheyanne Contracting, Inc.
c/o Alisha "Paige" Duarte
The Insurance Center
2105 Jack Warner Parkway
Tuscaloosa, AL 35401

Classic Commercial Exteriors, Inc.
c/o Timothy Mazur
506 North Jefferson Street
Albany, GA, 31701

Decorating & Coating Applications, Inc.
c/o Corporation Service Company
641 South Lawrence Street
Montgomery, AL 36104

Fire & Life Safety of America, Inc.
c/o National Registered Agents, Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

Hallway Plumbing, LLC
c/o Registered Agent Solutions Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

JPO Contractors, Inc.
c/o Jorge Ortega
9930 Empress Blvd.
Tuscaloosa, AL 35405
KLW Construction, Inc.
c/o Jack Martin Moorehead
46 McFarland Blvd., Suite 2
Northport, AL 35472

Metal Roofing Solutions, Inc.
c/o Melissa H. Smith
11871 Indian Creek Rd.
Duncanville, AL 35456

Mid South Floor Systems, Inc.
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

Motus Construction, LLC
c/o Mike Minsky
Rosenthal Bros., Inc.
740 Waukegan Road
P.O. Box 700
Deerfield, IL 60015-0700

Parker Engineering & Mechanical, Inc.
c/o Registered Agent Solutions Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

Premier Service Company, Inc.
c/o Cesar E. Soto, Registered Agent
13790 Leatherbury Road

Loxley, AL 36551

Acadia Insurance Company
c/o Daniel L. Swift
P.O Box 9010
Westbrook, ME 04098

ACE American Insurance Company
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

American Builders Insurance Company
c/o Norman Chandler
5151 Hampstead High Street, Ste. 200
Montgomery, AL 36116

Arch Specialty Insurance Company
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Auto Owners Insurance Company
c/o Sandra McCullough, Registered Agent
2568 Eastchase Lane
Montgomery, AL 36117-7134

Axis Surplus Insurance Company
c/o Corporation Service Company
641 South Lawrence Street
Montgomery, AL 36104

Brit Global Specialty USA
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Continental Western Insurance Company
c/o CT Corporation System
2 North Jackson Street, Suite 605

Montgomery, AL 36104
FCCI Insurance Company

Nationwide Property & Casualty Insurance Company
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104
Ohio Security Insurance Company
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Starr Indemnity Insurance Company
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Lloyd's of London
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

United Specialty Insurance Company
c/o National Registered Agents Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

U.S. Specialty Insurance Company
c/o National Registered Agents Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

United Fire & Casualty Company
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

/s/ Kile T. Turner
Of Counsel